UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LINDA SMITH and KEN SMITH,

          Plaintiffs,

   v.                          CAUSE NO. 3:17-CV-00815 DRL-MGG

NEXUS RVS, LLC, and ALLY
FINANCIAL, INC.,

          Defendants.

OPINION & ORDER

Before Linda and Ken Smith purchased a recreational vehicle from Nexus RVs, LLC, they confirmed with Nexus the vehicle's carrying capacity and weight. Reassured it could hold a certain amount of cargo, they decided on the 2018 Nexus Phantom. The Smiths received a written one-year limited warranty. If the Smiths discovered a defect in the vehicle's materials or workmanship, Nexus would repair or replace the defective part.

Shortly after the sale, the Smiths decided to weigh the vehicle; and, to their surprise, it weighed more than Nexus allegedly told them. They claim the RV's weight or carrying capacity constitutes a defect covered by the limited warranty. But that isn't all—the Smiths also say they experienced water running down the hallway, propane leaks, missing seals, an inoperable refrigerator, and other defects. They presented only certain of these to Nexus for repair.

Unsatisfied with the vehicle, the Smiths asserted several claims against Nexus: breach of express and implied warranties, breach of contract, violations of the Magnuson-Moss Warranty Act, and violations of the Indiana Deceptive Consumer Sales Act. Nexus and its affiliated financing company now request summary judgment on all claims. The court grants the summary judgment motion only in part.

BACKGROUND

Nexus manufactures recreational vehicles, including the 2018 Nexus Phantom purchased by the Smiths. Ally Financial, Inc. provided the financing for the sale, and Nexus assigned its rights under the retail installment contract and security agreement to Ally.

In 2017, the Smiths researched RV companies on the internet to buy an RV with a larger carrying capacity. Two Nexus vehicles caught their eye—the Viper and the Phantom. After a back and forth exchange via email and telephone with a Nexus employee, Dave Middleton, the Smiths decided on the Phantom, as it could "carry a lot more weight" than the Viper. To confirm the cargo carrying capacity, the Smiths sent Justin Nagel, Nexus salesman, an article discussing the Phantom's specification of only 760 pounds. The Nexus salesman told the Smiths the cargo capacity "as is" for their Phantom model would be 1,550 pounds or 1,450 pounds with entertainment centers.

Immediately before signing the sales paperwork on April 17, 2017, the Smiths asked Kelli McClanahan, Nexus finance representative, to confirm how much the RV weighed. She responded saying 17,950 pounds, which included full tanks of fuel, propane, and water. The Smiths proceeded with the sale and purchased a 2018 Nexus Phantom directly from Nexus.

Nexus provided the Smiths a one-year limited warranty. ECF 43-6. It covered "normal use against defects in Nexus materials and/or workmanship in construction of the recreational vehicle." *Id.* "**All obligations of Nexus [were] limited to replacing or repairing the defective part of component**." *Id.* The warranty also included disclaimers: "**This Limited Warranty is expressly IN LIEU of any other express warranty and is further IN LIEU of any implied warranty including, but not limited to, any implied WARRANTY OF MERCHANTABILITY or FITNESS for a particular purpose.**" *Id.* But, "**[t]o the extent that applicable state and/or federal law prohibits the exclusion of any remedy . . . any such remedy . . . is limited to one**

**(1) [*sic*], but not limited to, any implied WARRANTY OF MERCHANTABILITY or FITNESS for a particular purpose.**" *Id.*

      After signing the sales documents, the Smiths decided to stay in their RV for the next couple days while parked in Nexus' lot. During this time, they discovered a weight sticker inside a door panel that said the RV had a cargo capacity of 1,550 pounds with no cargo, occupants, or water. Concerned with the vehicle's weight, the Smiths drove it to a gas station to weigh it. The unit weighed 19,620 pounds with full tanks of propane and water, 125 pounds of cargo, their dog, and themselves. They returned to Nexus and spoke with the general manager, Richard Potter. He reweighed the vehicle without disclosing the results to the Smiths. When the Smiths later met with Dave Middleton, he told the Smiths that it was overweight because they added optional features such as the recliners and entertainment center. The Smiths asked Nexus to cancel the deal, but the company declined.

      Before the Smiths left the property, they noticed employees running out of their RV with wet towels. They asked the Nexus employees what they were doing, and they said the hose in the water tank had a leak. The employees said they put clamps on it to remedy the leak. The only concern the Smiths had leaving the facility was the weight of the vehicle.

      On their way home, the Smiths noticed water running down the hallway due to a water leak in the bathroom. They could not reach anyone at Nexus. When they arrived home, they discovered holes in the water tank hose. They contacted Nexus who told them that the company would reimburse them for the hose, which they then purchased from a local RV store and installed.

      The RV remained parked at the Smiths' home until June 2017. At that time, they began to smell propane emanating from the area between their RV and house. They called the fire department, which determined that the RV was dangerous and needed to be repaired. The Smiths called Nexus about scheduling a time to repair the vehicle, but Nexus could not schedule them until August. So instead, Nexus said the Smiths could go to Fabel RV, a local repair facility, and get it fixed. While the

RV was at Fabel, the following issues were repaired: propane hose leak; front end alignment; missing passenger side outer slide out seals; and deformed passenger side slide out window seal. Additionally, the Smiths decided to have tires with a higher rating installed on the RV because of their concerns with its weight.

After picking up the RV from Fabel, the Smiths packed the RV for their first trip in it to South Dakota. They began experiencing issues with their RV, including an inoperable refrigerator, leaking propane tank, and black water tank that would not go back into place. The Smiths called Nexus immediately about the propane. On August 14, 2017, the Smiths took the RV back to Nexus and had several repairs done under the warranty: LP lines; water pump; mud flap; refrigerator venting; main sensor on refrigerator; heater vent in bedroom; lower right drawer in bedroom; and black tank pipe. The Smiths had no concerns with any of the repairs conducted by Nexus, except a few broken screws.

On September 11, 2017, the Smiths sent a letter informing Nexus of the RV's warranty and its covered defects, along with Nexus' alleged deceptive acts. ECF 53-16. They requested that Nexus repurchase the RV from them, refund their expenses, pay damages, and take the vehicle back. The Smiths filed suit on October 31, 2017 alleging breach of warranty and/or contract, a violation of the Magnuson Moss Warranty Act, and a violation of the Indiana Deceptive Consumer Sales Act.

The Smiths retained an opinion witness, Philip Grismer, who inspected the vehicle, weighed it, and offered several opinions on its weight and defects. He weighed the vehicle twice: first, the total weight of the RV was 18,440 pounds with a carrying capacity of 1,060 pounds; second, the total weight of the vehicle was 19,160 pounds, exceeding the front axle weight rating. He opined that "the RV was poorly built and was defective from the manufacturer." He said the unit was "built on a chassis that was too lightly suspended with too low a weight rating on the tires equipped from manufacture to handle the weight normally accompanying an RV usage." In addition to the alleged overweight defect, Mr. Grismer discovered other defects in the RV during his inspection, including inoperable entry

steps, an inoperable headlight, distorted and buckling laminated floors, gaps in slide out seals, distorted slide out wiper seals, broken screws in the bottom slide out siderails, sloppy sealer application, and binding bedroom drawers. He viewed all these defects, along with the weight of the vehicle, to be covered under the warranty.

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present evidence on which a reasonable jury could rely to find in its favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must deny a summary judgment motion when there is admissible evidence that creates a genuine issue of material fact—a triable issue. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

The court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

Indiana law applies to the state claims here. *Indiana Ins. Co. v. Pana Community Unit School Dist. No. 8*, 314 F.3d 895, 900 (7th Cir. 2002) ("When neither party raises a conflict of law issue . . . the applicable law is that of the state in which the federal court sits."). Likewise, the warranty at issue specifies that Indiana law governs claims arising from the sale, purchase, or use of the vehicle.

DISCUSSION

A.      *Summary Judgment is Warranted on the Smiths' Express Warranty Claim.*

Under Indiana law, to prevail on an express warranty claim, a plaintiff must prove (1) the existence of a warranty, (2) a breach, (3) causation, and (4) damages. *Celina Ins. Co. v. Indianapolis Roofing & Sheet Metal Corp.*, 953 N.E.2d 679, 679 (Ind. Ct. App. 2011) (citing *Peltz Constr. Co. v. Dunham*, 436 N.E.2d 892, 894 (Ind. Ct. App. 1982)). The Smiths argue that Nexus breached two express warranties. First, they say Nexus created an express warranty when it represented to the Smiths that the RV weighed 17,950 pounds and had a total carrying capacity of 1,550 pounds. Second, they say Nexus breached its limited written warranty.

"[A]ny affirmation of fact or promise made by the seller to the buyer" can be considered an express warranty. Ind. Code § 26-1-2-313(1). The complaint alleged the details of such affirmations of fact, beyond the limited warranty. *See, e.g.*, ECF 1 ¶¶ 15, 17, 19. The court cannot then agree with Nexus that the Smiths are attempting to amend their complaint through summary judgment argument. *Cf. Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). The Smiths have supported these same affirmations with evidence on this summary judgment record. Their position requires no amendment to the pleadings.

Still, the written warranty explicitly disclaimed any other express warranties. Under the title "**DISCLAIMER OF WARRANTIES**," the Smiths agreed that the written warranty was "**expressly IN LIEU of any other express warranty**." ECF 43-6 at 1 (emphases original). They likewise agreed above their signatures "**TO ABIDE BY ALL OF ITS TERMS AND PROVISIONS INCLUDING, BUT NOT LIMITED TO, THE DISCLAIMER OF ALL OTHER EXPRESS AND IMPLIED WARRANTIES**." *Id* at 2 (emphases original).

Indiana law allows manufacturers to disclaim express warranties. *See* Ind. Code § 26-1-2-316(1). "Words or conduct relevant to the creation of an express warranty and words or conduct

tending to negate or limit warranty shall be construed where reasonable as consistent with each other." *Id.* Here, the limited warranty includes both a one-year warranty for materials and workmanship and also a disclaimer of all other express warranties. The waiver isn't unreasonable—nor do the Smiths argue as much. Consequently, any allegations of other express warranties preceding the written warranty cannot be the basis of an express warranty action. *See Wilson v. Royal Motor Sales, Inc.*, 812 N.E.2d 133, 139 (Ind. Ct. App. 2004) ("[i]f no additional contract was signed, then the dealer disclaimed all express or implied warranties"). The only plausible express warranty claim must stem from the limited warranty.

The limited warranty covered "normal use against defects in Nexus materials and/or workmanship in construction of the recreational vehicle." ECF 43-6. The parties dispute whether the RV's weight or carrying capacity is such a defect. Nexus calls it a design defect only—not covered by the warranty.

No Indiana court seems to have defined the terms "materials" or "workmanship." *Bruce Martin Constr. v. CTB, Inc.*, 735 F.3d 750, 753 (8th Cir. 2013) (applying Indiana law). Other courts have borrowed from warranty's cousin—product liability—to differentiate between design defect and materials and workmanship. "[D]efects in material and workmanship refer to departures from a product's intended design"—what product law calls a manufacturing defect—"while design defects refer to the inadequacy of the design itself." *Id.*; *see also Lombard Corp. v. Quality Aluminum Prods. Co.*, 261 F.2d 336, 338 (6th Cir. 1958) ("A defect in material is a defect in quality. . . . Design, on the contrary, involves the overall plan of construction and operation."); *see also Mack Trucks, Inc. v. Borgwarner Turbo Sys.*, 508 F. Appx. 180, 184 (3d Cir. 2012) ("Design is an earlier and distinct phase of product production not captured by the workmanship warranty.").

Indiana product liability law likewise distinguishes between design and manufacturing defects. "A product may be defective under the [Indiana Product Liability Act] if it is defectively designed, if

it has a manufacturing flaw, or if it lacks adequate warnings about dangers associated with its use." *Brewer v. PACCAR, Inc.*, 124 N.E.3d 616, 621 (Ind. 2019); *accord Campbell Hausfeld/Scott Fetzer Co. v. Johnson*, 109 N.E.3d 953, 956 (Ind. 2018). Of academic interest in understanding this distinction, since the 1995 amendments, the IPLA grounds design defect in negligence terms, *see* Ind. Code § 34-20-2-2; *Campbell Hausfeld*, 109 N.E.3d at 957, while a manufacturing defect theory in Indiana remains grounded in strict liability in the true sense, *see* Ind. Code § 34-20-2-2; *see also Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1007-08 (7th Cir. 2020). In short, the distinction between the two concepts is notable.

The Smiths offer no contrary authority or cogent explanation why this distinction should have less meaning in the types of defects that warranties commonly cover. After all, the purpose of a warranty is to provide a remedy—often repair or replacement, and occasionally too a *pro rata* refund. This warranty likewise provides for repair or replacement as remedies. A manufacturer can fittingly provide repair or replacement for a build defect—for example, defective parts or equipment. The replacement of an entire product design is an altogether different beast, with every reason to require the warranty language then to cover a design defect expressly, if in fact the parties intend that breadth in the warranty. Indeed, lawyers know this distinction in warranty drafting all too well. *See generally* Thomson Reuters, *Sale of Goods Agreement (Pro-Buyer), Practical Law Standard Document* 5-541-6567, art. XIV. A manufacturer cannot replace or repair a defective design without redoing the entire product— a remedy not contemplated by this warranty.

Any invitation to interpret "workmanship" more broadly to cover design defects (as "materials" from its plain meaning can clearly refer only to manufacturing defects) would not just run contrary to this distinction in product warranty law but this warranty's plain language. The court must apply the contract's "plain and ordinary meaning." *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012). The warranty here unmistakably limits the covered materials and workmanship "in the construction of the recreational vehicle," not in any sense of the word its design. The court adheres

to the warranty's plain language in concluding that this warranty wasn't intended to cover design issues, only defects from materials and workmanship in its construction. *See Bruce Martin*, 735 F.3d at 754.

The court thus must determine whether the alleged defect in the RV's weight or carrying capacity constitutes a defect in materials or workmanship in the vehicle's construction—namely, whether the materials or workmanship deviated from the vehicle's intended design. The Smiths have not presented a triable issue on this point.

The Smiths offer an opinion witness (Philip Grismer), but his testimony proves unhelpful in developing a genuine issue for trial: "Q: So, I'm trying to digest what you just said, if it's an issue–if it's a design issue, if the weight could be qualified as a design issue, do you consider that to be an issue with the workmanship? A: No." ECF 43-15 at 85. He doesn't qualify that answer except to say that the issue stems from "[d]esign—it's design issues or manufacturing issues." *Id.* He also agrees the issue isn't with the materials, but a "poor choice on manufacturing." *Id.* at 86. He says "you put too much fancy stuff in the thing and [] it's got a weight problem." *Id.* Later yet, he clarifies that his concern is with the chassis: "if it had been built on a [] heavier chassis . . . it would have eliminated this situation." *Id.* at 155. Even more, "the chassis weight is the reason for the weight limitations," though "the chassis was fine . . . [i]t's just not big enough to handle this particular RV." *Id.* at 169.

Whatever sense can be made of this opinion witness's back and forth, two conclusions remain unrebutted—he points to no defect in materials or workmanship in the vehicle's construction, and the only defect causing the weight or carrying capacity issue is the chassis. According to his deposition, the issue resulted from neither materials nor workmanship.[1] The written warranty thus provides no remedy for this particular defect; in fact, much to the contrary, the warranty excludes coverage for the "chassis and drive train and any part of the chassis included/supplied by the chassis manufacturer."

---

[1] Mr. Grismer states in his affidavit that "the RV's overweight defect is the result of the materials and workmanship used during the RV's manufacture" (ECF 53-17), but this conclusory statement contradicts his deposition testimony. *See Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1172 (7th Cir. 1996).

ECF 43-6 at 1. The Smiths argue that "Mr. Grismer has not seen anything that would indicate that the RV's overweight defect was not the result of a manufacturing defect in material or workmanship" (ECF 53-1 at 13), but that is a far cry from providing evidence that it is. And that is their burden on summary judgment. *Goodman*, 621 F.3d at 654.

The Smiths also assert that the limited warranty covered the following defects: (1) water leak, (2) propane leak, (3) missing passenger side slide out seals, (4) deformed passenger slide out window seal, (5) excessive pull to the right, (6) missing air conditioner main sensor, (7) inoperable refrigerator, (8) crushed heater vent under bed, (9) misaligned bedroom drawer, (10) defective water pump, (11) displaced black tank valve, (12) inoperable LP monitor, (13) broken screws, (14) unaffixed ladder, (15) inoperable entry steps, (16) inoperable headlight, (17) distorted and buckling laminated floors, (18) gaps in slide out seals, (19) distorted slide out wiper seals, (20) broken screws in the boom slide out side rails, (20) sloppy sealer application, and (21) binding bedroom drawers. In response, Nexus argues that these defects were not presented to it within a reasonable time or were repaired after a reasonable number of attempts.

By law, the Smiths were required to provide Nexus with notice of the alleged defects. "Timely notice of a breach of warranty is a substantive condition precedent to recovery." *McClure Oil Corp. v. Murray Equip., Inc.*, 515 N.E.2d 546, 554 (Ind. Ct. App. 1987). The limited warranty required the Smiths to "promptly contact Nexus by certified mail, return receipt requested, giving specific notice of the issue(s) being experienced with the recreational vehicle." ECF 43-6.

The undisputed evidence shows that Nexus either fixed (or arranged repairs for) these defects or never received notice of them until this lawsuit. The Smiths argue that, as they were leaving Nexus after purchasing their vehicle, they noticed Nexus employees running out of their RV with wet towels. Nexus assured the Smiths it had repaired the water leak. After the Smiths still had problems with the water leak, they contacted Nexus and informed them they were going to replace the hose themselves.

Nexus agreed. The hose was fixed. The Smiths never again presented the water leak as a defect to Nexus. Thus, no breach occurred on this basis.

The Smiths also had problems with a leaking propane tank and told Nexus. The Smiths were given permission to get it fixed at Fabel RV. While there, the Smiths had other issues addressed without notifying Nexus: missing passenger side slide out seals, deformed passenger slide out window seal, and an excessive pull to the right. Because they didn't present these issues to Nexus before the repairs were done, they cannot be considered repairs with notice by Nexus. Even so, Fabel repaired these other issues, and there is no evidence that the Smiths complained of them to Nexus thereafter.

While the vehicle was at Fabel, the Smiths had the company install new tires. It was out of service for four weeks, though the only defect presented to Nexus for repair was the propane tank leak. So the argument that the unit was being repaired for an unreasonable time is erroneous: the Smiths voluntarily had new tires replaced and other conditions fixed, but not with notice to Nexus or with its permission.

During their first trip in the RV, the Smiths had additional problems with the RV: more propane leaks, an inoperable refrigerator, and black tank valve issues. They contacted Nexus and scheduled an appointment to have these issues repaired. While there, Nexus repaired the following: air conditioner main sensor, refrigerator, heater vent, bedroom drawer, propane leak, water pump, black tank valve, LP monitor, screws, and ladder. The vehicle was out of service for one week.

Leaving the facility, a couple broken screws had not been fixed but otherwise everything had been repaired. The Smiths later discovered the headlights were inoperable but never presented this issue to Nexus until this lawsuit.

Thus, all defects were repaired within one to two attempts or never presented to Nexus for repair. An inspection finding additional causes for complaint solely after the warranty expired proves irrelevant to whether Nexus breached the express warranty on this record. Even the Smiths admit

this: "the additional warranty defects are relevant to [their] breach of implied warranty claim." ECF 53 at 14. Even more, the Smiths' letter to Nexus on September 11, 2017 does not identify any specific defects other than the vehicle's weight (and passing reference to the propane tank issue that had already been fixed). *See* ECF 53-6. Nexus thus had no reasonable opportunity to repair other defects. There is no triable issue on this record permitting a reasonable jury to find that Nexus breached the warranty by not repairing defects presented to it.

The warranty also didn't fail of its essential purpose. When circumstances cause a warranty's remedy to fail of its essential purpose, the warranty can be breached. Ind. Code § 26-1-2-719(2). A warranty fails of its essential purpose when application of the remedy will not further the warranty's purpose. *Cimino v. Fleetwood Enters.*, 542 F. Supp.2d 869, 887 (N.D. Ind. 2008) (citing *Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078, 1085 (Ind. 1993). All defects presented to Nexus were corrected the first time, except the two attempts it took for the company to address the propane leak. That didn't cause this warranty to fail of its essential purpose. *See Mathews v. REV Rec. Grp., Inc.*, 931 F.3d 619, 622 (7th Cir. 2019); *cf. General Motors Corp. v. Sheets*, 818 N.E.2d 49, 53 (Ind. Ct. App. 2004) (explaining that under Indiana's Lemon Law, "[a] reasonable number of attempts is considered to have been undertaken if the nonconformity has been subject to repair at least four times but continues to exist or if the vehicle has been out of service for at least thirty business days and the nonconformity continues to exist"). Although the RV may have undergone repairs for approximately 5 weeks, on this record that wasn't unreasonable, particularly because certain repairs occurred without notice to Nexus or voluntarily by the Smiths (*e.g.*, tires). Their opinion witness concurs. *See* ECF 43-15 ("I would say it's not uncommon for it to be two weeks to a month."). Summary judgment must be entered on the express warranty claim.

The breach of contract claim fares no better. The Smiths may assert both breach of contract and breach of warranty claims. Under Indiana law, the two can be distinct. *See Zawistoski v. Gene B.*

*Glick Co.*, 727 N.E.2d 790, 792 (Ind. Ct. App. 2000). Yet, the court in *Zawistoski* recognized that when a plaintiff is seeking relief through both actions based on the same contractual provision—as here— they are the same. What's more, the Smiths have shown no triable issue on breach. The court grants summary judgment on the express warranty and contract claims accordingly.

      B.    *Genuine Triable Issues Remain on the Implied Warranty of Merchantability Claim.*

The Smiths argue that Nexus breached an implied warranty of merchantability based on the vehicle's weight. Nexus doesn't argue that it disclaimed all implied warranties; wisely so, because "[n]o supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product." 15 U.S.C. § 2308. Instead, Nexus argues that it limited the duration of any implied warranty, but it offers no explanation why, given any timing traceable in this case, this point precludes the claim here.

In addition, though federal law permits a written warranty to limit an implied warranty's duration to a "reasonable" period, that limitation must be "set forth in clear and unmistakable language and prominently displayed on the face of the warranty." 15 U.S.C. § 2308(b). On this record, the limitation here is vague and non-sensical: "**To the extent that applicable state and/or federal law prohibits the exclusion of any remedy permitted under [law], any such remedy . . . is limited *to one (1), but not limited to,* any implied WARRANTY OF MERCHANTABILITY or FITNESS for a particular purpose.**" ECF 43-6 (italics added). The court might make an educated determination that the warranty here merely omitted two items—both a duration (often a year) and thereafter appropriate qualifying language—but the court isn't in the business of supplying missing terms. *See B&R Oil Co., Inc. v. Stoler*, 77 N.E.3d 823, 829 (Ind. Ct. App. 2017) ("Nor may a court write a new contract for the parties or supply missing terms."). This triable issue precludes summary

judgment too. *See Pegg v. Nexus RVs LLC*, 2019 U.S. Dist. LEXIS 110067, 29 (N.D. Ind. July 2, 2019) (Simon, J.) (finding same warranty disclaimer "a bit confusing" and denying summary judgment).

Yet more, the Smiths have adduced evidence establishing a triable issue on whether this unit was merchantable. Under Indiana Code § 26-1-2-314(2)(c), an implied warranty of merchantability requires that the goods be fit for the ordinary purposes for which such goods are used. The issue is "not whether a specific defect caused the breach of this warranty (of merchantability), but, rather, whether the seller has sold goods that were not merchantable." *Castagna v. Newmar Corp.*, 340 F. Supp.3d 728, 736 (N.D. Ind. 2018) (DeGuilio, J.) (quoting *A.A.A. Exteriors, Inc. v. Don Mahurin Chevrolet & Oldsmobile, Inc.*, 429 N.E.2d 975, 978 (Ind. Ct. App. 1981)). To be merchantable, goods must pass without objection in the trade and be fit for the ordinary purpose for which such goods are used. Ind. Code § 26-1-2-314(2).

A reasonable jury could find on this record that the RV was not merchantable at the time of sale due to its weight. When the Smiths weighed the vehicle the first time (within the first week of owning it), it weighed 19,620 pounds. When Mr. Grismer weighed the unit, it was 18,440 pounds and had a carrying capacity of only 1,060 pounds (less than the 1,550 pounds specified by the weight sticker in the vehicle). With three occupants and no water or cargo, the RV weighed in at 19,160 pounds and exceeded the front axle weight rating. Mr. Grismer opines that "the RV is overweight because, by itself, it weighs more than it should to allow for a safe comfortable gap to accommodate the realistic occupancy and usage of an RV." He adds that "the RV's excessive weight renders it unsafe and unusable on public streets and roadways. The RV is unsafe to operate overweight since an RV that is overweight can blow a tire, break an axle, or fail to stop." The owner manual contains a warning not to exceed the RV's rated load or that of any axle. This evidence presents a triable issue whether the RV was merchantable.

The Smiths say at one point that the vehicle was unmerchantable through other defects, but their argument remains undeveloped. ECF 53 at 14-15; *see Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) ("even arguments that have been raised may still be waived . . . if they are underdeveloped, conclusory, or unsupported by law."). Moreover, Mr. Grismer provides no facts to show how these additional defects made the vehicle unmerchantable. That said, on this record, the Smiths have presented a triable issue as to the vehicle's merchantability through evidence of the potential dangers associated with the vehicle's weight or carrying capacity. This is enough for the Smiths' implied warranty of merchantability claim to withstand summary judgment.

The MMWA "does not provide an independent basis for liability; it only provides for federal jurisdiction for [the] state claims." *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001). A MMWA claim thus rises and falls with the underlying state law claim. *Id.* This federal avenue thus survives for the same reasons. *See* 15 U.S.C. § 2310(d) (a consumer who is damaged by a supplier or warrantor's failure to comply with "any obligation under [the MMWA], or under a written warranty, *implied warranty*, or service contract, may bring suit for damages") (emphasis added).

C.      *Genuine Triable Issues Remain on the Indiana Deceptive Consumer Sales Act.*

"A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." Ind. Code § 24-5-0.5-3(a). A breach of warranty or misrepresentation regarding the vehicle's quality can violate the IDCSA when it proves more than "mere puffing." *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 332-33 (Ind. 2013). The statute prohibits a supplier from representing that a product has performance, characteristics, accessories, uses, or benefits it doesn't have, which the supplier knows or should reasonably know it doesn't have. Ind. Code § 24-5-0.5-3(b)(1). The IDCSA also prohibits a supplier

from representing that the goods are of a particular standard or quality if the supplier knows or should reasonably know that it isn't. Ind. Code § 24-5-0.5-3(b)(2). The Smiths have demonstrated a triable issue as to whether Nexus violated the IDCSA.

The Smiths needn't plead intent to defraud or to mislead. *See McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998) ("language and structure of the [IDCSA] do not require intent as an element of every deceptive act"). There is a difference between two types of acts under the IDCSA: uncured and incurable. An uncured act is one where no offer to cure is made to the consumer within thirty days or when an offer to cure is made and accepted but not completed within a reasonable time. Ind. Code. § 24-5-0.5-2(7). An incurable act is one that a supplier takes as "part of a scheme, artifice, or device with intent to defraud or mislead." Ind. Code § 24-5-0.5-2(8). "[I]ntent on the part of the violator is required under the Act for 'incurable' deceptive acts, but is not required for most other 'deceptive acts.'" *McKinney*, 693 N.E.2d at 67.

Nexus presents a two-fold argument for summary judgment: the Smiths pleaded their IDCSA claim without the required particularity and cannot show any misrepresentation. The alleged failure to plead their claim with particularity seems less vital here when fraud need not be alleged. "Indiana Trial Rule 9(b)—which requires that fraud be pleaded with 'particularity'—applies to actions under the Act that are 'grounded in fraud.'" *Id.* The Smiths concede their allegations under the IDCSA sound in "uncured" acts only; thus, pleading fraud with particularity wasn't a prerequisite here.

The Smiths point to at least three representations of fact concerning the RV's weight or carrying capacity to support their IDCSA claim. First, Justin Nagel from Nexus represented that the RV had 1,450 pounds of cargo carrying capacity with both entertainment centers. Second, the Smiths asked Kelli McClanahan, a Nexus finance representative for Nexus, how much the RV weighed. She said 17,950 pounds, which allowed for a carrying capacity of 1,550 pounds. Third, the vehicle had a weight sticker representing that the unit had a carrying capacity of 1,550 pounds, which did not include

a full tank of water. At least the two initial representations occurred before the sale and could lead a reasonable jury to conclude Nexus misrepresented the unit's weight and ordinary suitability. The court must deny summary judgment accordingly.

D.    *The Smiths Have Not Established Genuine Triable Issues to Avoid Summary Judgment on their Revocation of Acceptance Theory.*

Under Indiana Code § 26-1-2-608(1), a buyer "may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it." Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the basis for it. Ind. Code § 26-1-2-608(2). Nonwritten notice or equivocal notice of revocation isn't sufficient. *De Voe Chevrolet-Cadillac, Inc. v. Cartwright*, 526 N.E.2d 1237, 1240 (Ind. Ct. App. 1988). Merely complaining about the quality of the goods, without more, doesn't adequately inform the seller the buyer has revoked. *Id.*

The commentary to Indiana Code § 26-1-2-608 states that the content of the notice "is to be determined in this case as in others by considerations of good faith, prevention of surprise, and reasonable adjustment." More than "mere notification of breach" is required. *Id.* At minimum, the notice should clearly indicate that the buyers view their contractual obligations as having been terminated because of the product's nonconformity and that the buyers wish to return the product. *See* White, Summers, & Hillman, UNIFORM COMMERCIAL CODE § 9:19 (6th ed.) ("The notice must inform the seller that the buyer does not wish to keep the goods . . . [but] it need not be 'formal.'"). Revocation of acceptance purports to thrust the product back on the seller and thus triggers an altogether different remedy than mere damages—rescission—so the notice should be commensurate with the remedy's significance and avoid undue surprise or equivocation.

Nexus argues in the first instance that the Smiths failed to revoke acceptance within a reasonable amount of time after discovering grounds for revocation and before the RV substantially changed. In other words, the company pursued the narrow argument that the Smiths didn't provide

timely notice. The company pivots in its reply brief to argue that it complied with its warranty and that no existing nonconformities remain with the RV, leaving revocation an unviable option. Nexus waived reply arguments. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012).

Turning to notice, the Smiths argue they provided notice at least three times. First, they orally asked Nexus to cancel the deal and take the RV back on April 20, 2017. Second, on September 11, 2017, the Smiths say their counsel sent a written letter to Nexus informing the company of its alleged warranty and state law violations. Third, in their complaint, which was filed on October 31, 2017, the Smiths requested an order for rescission or revoked acceptance. ECF 1 at 20-21.

The first alleged notice was oral—neither written nor unequivocal—and doesn't suffice as revocation notice under Indiana's commercial code. *See De Voe Chevrolet-Cadillac,* 526 N.E.2d at 1240.

The second notice describes alleged deceptive acts committed by Nexus under the IDCSA and lists seventeen such alleged acts. In the final paragraph of a seven-page letter, all devoted to the IDCSA, the Smiths demand that Nexus "cure these acts by repurchasing this defective RV back, refunding their money, and paying the fees/costs they are entitled to by law." ECF 53-16. The Smiths say this is revocation of acceptance, but the letter goes on to state that "[u]ntil then my clients have a lien on the RV for their investment in it. They will sign over their rights to the [RV] just as soon as you pay the damages and you can then come and get the [RV]." *Id.*

Revocation has the effect of permitting the Smiths to avoid their obligations to pay for the previously accepted RV (or to have their payment returned) if they give the RV to the seller. *See Agrarian Grain Co. v. Meeker*, 526 N.E.2d 1189, 1191 (Ind. Ct. App. 1988). "Hence, notice of revocation must fairly apprise the seller that the buyer is returning the goods." *Id.* One problem with the September 2017 letter is that it remains unclear that the Smiths are returning the goods. In fact, it says the opposite: "[u]ntil then my clients have a lien on the RV." The Smiths even say they won't sign over their rights to the RV (return the product) until Nexus pays damages. In other words, Nexus

must meet their demands before they will relinquish their rights to the RV. This letter isn't unequivocal revocation of acceptance.

As a second problem, the letter focuses exclusively on Nexus' alleged deceptive acts under the IDCSA. The purpose of the letter is to seek correction of uncured acts and then to perfect an IDCSA claim before suit. Though a notice of revocation of acceptance needn't be formal, it cannot be cloaked solely under a different statute and then later repurposed as though all along the Smiths wanted to revoke acceptance under the UCC, particularly when the letter hasn't expressed that intent. Instead, the letter wants Nexus to repurchase the vehicle and pay damages to "cure these acts"—thus invoking remedies under the IDCSA, not the UCC. No reasonable jury could find that this letter provided sufficient notice to revoke acceptance under Indiana Code § 26-1-2-608.

The Smiths also claim their complaint was sufficient notice of their intent to revoke acceptance, though the case they cite doesn't stand for that proposition. *See LDT Keller Farms, LLC,* 2011 U.S. Dist. LEXIS 34209, 26 (N.D. Ind. Mar. 30, 2011) (Cosbey, J.) (citing *Collins v. Pfizer, Inc.,* 2009 U.S. Dist. LEXIS 3719, 2-3 (S.D. Ind. Jan. 20, 2009) (addressing notice of warranty breach in personal injury cases)). The notice a complaint provides for a lawsuit often doesn't serve the same purpose as notice of revocation—namely, the purpose of facilitating private business resolutions, negotiations, or other non-litigious means to remedy the dispute, without the pivot occurring suddenly in a court pleading. After all, the UCC commentary stresses the need for good faith and the avoidance of surprise in the provision of revocation notice. Perhaps a rare case might present a basis to conclude otherwise, but this isn't such a case.

To underscore that point, the Smiths first learned of their allegedly non-conforming RV within days of receiving it. The weight or carrying capacity, which plays the prominent role in their dissatisfaction, came to light immediately. They could consequently have revoked acceptance through an unequivocal written notice then. After they continued to use the RV for several months, pursued

19

repairs, sought legal advice, and asked Nexus to repurchase their RV on September 11, 2017 to cure what they viewed as deceptive uncured acts, certainly any notice to revoke should have come already by that same point to be reasonable and timely. Waiting yet longer to file their complaint and then to claim that this served as notice of revocation of acceptance wasn't timely notice. No reasonable jury could find that the complaint satisfied the timely notice requirement under Indiana Code § 26-1-2-608(2). The court grants summary judgment on this theory of recovery accordingly.

        E.       *The Limitation on Incidental and Consequential Damages is Enforceable.*

Under Indiana Code §§ 26-1-2-715(1 & 2), a buyer may normally recover, in addition to warranty damages, incidental and consequential damages resulting from a seller's breach. *See Michiana Mack, Inc. v. Allendale Rural Fire Prot. Dist.*, 428 N.E.2d 1367, 1372 (Ind. Ct. App. 1981). A seller may limit the buyer's remedies, including consequential and incidental damages. Ind. Code § 26-1-2-719(1-3). When a warranty fails of its essential purpose, regardless of the limitation, a plaintiff is entitled to all remedies available to him under the commercial code. Ind. Code § 26-1-2-719(3); *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning*, 746 N.E.2d 941, 947 (Ind. 2001).

Here, the court has already determined that there is no question of fact as to whether the warranty failed of its essential purpose. Thus, the Smiths' only argument for invalidating the limitation on damages fails. The disclaimer as to the damages is enforceable. The Smiths cannot recover incidental and consequential damages as they were contractually disclaimed.

        F.       *The Motion to Strike is Unnecessary and Denied.*

Nexus moved to strike portions of the Smiths' affidavits (ECF 55). The company argues that the best evidence rule prevents them from summarizing the contents of original writings to prove their contents. Specifically, they attempt to strike the Smiths' statements regarding the email with Justin Nagel and a summary of items repaired at the Nexus repair facility.

Motions to strike are generally disfavored, "and usually only granted in circumstances where the contested evidence causes prejudice to the moving party." *Rodgers v. Gary Cmty. Sch. Corp.,* 167 F. Supp.3d 940, 948 (N.D. Ind. 2016); *Kuntzman v. Wal-Mart*, 673 F. Supp.2d 690, 695 (N.D. Ind. 2009). The court is not even required to strike inadmissible evidence: "the Federal Rules of Civil Procedure allow parties to oppose summary judgment with materials that would be inadmissible at trial so long as *facts* therein could later be presented in an admissible form." *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(c)(2)-(4)).

Though Nexus may be right that a witness should not restate documents that can stand on their own, there is nothing about these affidavits that the court relied on in reaching its result today that wasn't also included in their deposition or provided by way of the original document. No party was prejudiced. "[I]t is the function of a court, with or without a motion to strike, to review carefully both statements of material facts and statements of genuine issues and the headings contained therein and to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the statement." *Mayes v. City of Hammond*, 442 F. Supp.2d 587, 596 (N.D. Ind. 2006). The court has done so.

CONCLUSION

Because the limited warranty here excluded all other express warranties, the Smiths cannot assert express warranty claims other than those arising from defects in the material and/or workmanship in the construction of the vehicle under the written warranty. The Smiths have not demonstrated a triable issue as to whether the weight or carrying capacity of the vehicle constituted a defect in materials or workmanship in the vehicle's construction. Thus, the court grants summary judgment on their state and federal express warranty claims and state breach of contract claim.

The contractual exclusion of consequential and incidental damages is enforceable. The Smiths also did not provide Nexus sufficient and timely notice of revocation of acceptance. The court

21

accordingly grants summary judgment on these theories of recovery. All other issues remain for the jury, including the remnant claims against Nexus and Ally.

Accordingly, the court GRANTS IN PART and DENIES IN PART Nexus' motion for summary judgment (ECF 42) and DENIES its motion to strike (ECF 55).

SO ORDERED.

June 19, 2020                                      s/ Damon R. Leichty
                                                         Judge, United States District Court

22