UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LINDA AND KEN SMITH, <br><br> Plaintiffs, <br><br> v. <br><br> NEXUS RVS, LLC and ALLY FINANCIAL, INC., <br><br> Defendant. | CAUSE NO. 3:17-CV-815 DRL |

OPINION & ORDER

The court held a four-day jury trial that concluded May 27, 2021. The jury returned a verdict for Linda and Ken Smith on their Indiana Deceptive Consumer Sales Act (IDCSA) claim and awarded $150,000 in damages. Following trial, the Smiths requested judgment as a matter of law on the sufficiency of the defense's pre-suit cure letter, treble damages, attorney fees, and costs. Nexus contests each of these requests. The court takes up each issue in turn.

DISCUSSION

A.  *Pre-Suit Letter.*

The Smiths ask the court to rule as a matter of law that the letter sent by Nexus RVs, LLC (through counsel) wasn't an "offer to cure" as defined by the IDCSA. *See* Ind. Code §§ 24-5-0.5-2(a)(5), (a)(6). Nexus argues that the court cannot consider the pre-suit letter because it wasn't admitted as an exhibit at trial. One has nothing to do with the other when it comes to attorney fees. A motion for attorney fees isn't contingent on just trial evidence.

"A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). Nothing within the IDCSA (the substantive law) requires attorney fees to be proved at trial. The statute speaks in terms of a "proceeding," not a trial; and nothing removes that common

question from the court to require a factfinder to decide the issue instead. *See* Ind. Code §§ 24-5-0.5-4(j), (k). In fact, the IDCSA expressly contemplates that the court will decide the question. *See* Ind. Code § 24-5-0.5-4(a) ("the court may award reasonable attorney fees to the party that prevails").

The court retains the discretion to establish the procedure for deciding attorney fees under Rule 54. That procedure may include reviewing additional information to help the court resolve the fee issue, and even in rare occasions permitting discovery to develop that information. *See* Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 2680 (4th ed.); *see, e.g., Hogan v. Fairfax Cnty. Sch. Bd.*, 645 F. Supp.2d 554, 577 (E.D. Va. 2009). For instance, it is customary for the court to consider billings, affidavits, and other information to decide the fee question.

The IDCSA leaves the court's discretion undisturbed. If an offer to cure is timely, a supplier may submit it as evidence to prove that the supplier actually made one. *See* Ind. Code § 24-5-0.5-4(j); *see also* Ind. Code §§ 24-5-0.5-2(a)(6), 24-5-0.5-4(a). In addition, the IDCSA also allows the court to consider a timely offer to cure when the supplier wishes to avoid attorney fees—as here. *See* Ind. Code § 24-5-0.5-4(j)(1), (j)(2). In short, the court may consider the letter.

The Smiths attached the letter to their motion [ECF 128-1]. Under the IDCSA, a supplier may not be held liable for fees and costs "following the timely delivery of an offer to cure . . . unless the actual damages awarded, not including attorney's fees and costs, exceed the value of the offer to cure." Ind. Code. § 24-5-0.5-4(k). An "offer to cure" is one that "is reasonably calculated to remedy a loss claimed by the consumer" and "includes a minimum additional amount that is the greater of: (i) ten percent (10%) of the value of the remedy [reasonably calculated to address the consumer's loss], but not more than four thousand dollars ($4,000); or (ii) five hundred dollars ($500); as compensation for attorney's fees, expenses, and other costs that a consumer may incur in relation to the deceptive act." Ind. Code § 24-5-0.5-2(a)(6). The offer must be in writing. *See* Ind. Code § 24-5-0.5-2(a)(5).

Nexus sent its letter on October 2, 2017. It wasn't an offer to cure. Nexus said it was "willing to work with [its] customers and would like to further investigate this matter" [ECF 128-1]. It was an offer to investigate, but not an offer to cure. The letter asked for additional information about the weight issue, despite the previous reports about the weight issue to Nexus already, but neither side offers any evidence whether additional information was provided. The letter never offered to modify or rescind the consumer transaction, never pledged to perform an offer should the Smiths accept it, never proposed a cure that reasonably addressed the weight issue (on which the jury found for the Smiths), and never offered any compensation for fees or costs. *See* Ind. Code §§ 24-5-0.5-2(a)(5), (a)(6). Moreover, the letter could not operate as an offer to cure to avoid a fee or cost award because it omitted any amount of value. *See* Ind. Code. § 24-5-0.5-4(k). The jury's damage award necessarily exceeded the unspoken offer, thereby preserving the right to fees and costs. *See id.*

The court remains uncertain whether the motion on this letter seeks anything more than this. The parties argue whether the Smiths moved under Rule 50 for the court to decide this issue and whether the court can decide a motion under Rule 50 now. *See* Fed. R. Civ. P. 50. The record indeed shows the Smiths moved on this issue under Rule 50 [ECF 144 at 4-6, 12]. But this seems beside the point for two reasons: given that the motion for attorney fees falls under Rule 54, not Rule 50; and given the stipulation the parties reached thereafter at trial. Even so, when a court denies a motion for judgment as a matter of law at trial, the court "is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion" under Rule 50(b). This later motion may be made after trial. *See* Fed. R. Civ. P. 50(b).

The parties pivoted at trial, however. Given time to discuss the issue, the parties stipulated instead to have the court decide the sufficiency of the letter as a statutory offer to cure as a matter of law [ECF 144 at 18-21]. Nexus argues there was no such stipulation—an altogether troublesome position because the trial transcript is quite clear the company did so stipulate [*id.*]. The parties

3

removed from the jury the issue of whether Nexus left the deceptive act uncured—that is, whether Nexus sent an offer to cure and necessarily whether the act was cured within a reasonable time after the Smiths accepted any such offer. *See* Ind. Code § 24-5-0.5.-2(a)(7). The issue was otherwise covered in proposed instructions that the parties agreed to delete [ECF 113 Instrs. 6, 8].

The parties were free to do so. The right to a jury trial applies to specific issues, not the entire action. *See* Fed. R. Civ. P. 38(c); Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2337 (4th ed.). The parties may withdraw a proper demand for a jury determination so long as they consent, something they may do on the record outside of a formal written stipulation. *See* Fed. R. Civ. P. 38(d), 39(a)(1). This option to withdraw an issue from the jury is well-established. *See* Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2336 (4th ed.) ("[T]hough a jury has been demanded by one or more of the parties, some or all of the issues will be tried to the court if the parties so stipulate[.]"); 8 Moore's Federal Practice § 39.13 (3d ed.) ("Whenever the record adequately reflects the consent of the parties, even if not in the form of a stipulation, the courts have permitted nonjury trials of issues that are otherwise subject to valid jury demands."); *see, e.g., Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1205-06 (7th Cir. 1989).

To the extent the record required any additional finding before entry of judgment, the court found against Nexus on this issue in directing judgment for the Smiths—something that neither side opposed [ECF 153 at 10-11]. The record was indeed one-sided. The Smiths adduced evidence that they repeatedly notified Nexus of the weight issue. The court also found that their written notice was sufficient. The October 2017 letter from Nexus wasn't an offer to cure within the IDCSA's meaning. In short, the court entered judgment against Nexus on the IDCSA claim, and the court may consider evidence now, including the letter, in deciding the attorney fee question. This too is exactly as the parties agreed [ECF 144 at 35-36].

4

B. *Treble Damages.*

The Smiths ask the court to treble the jury's damage award of $150,000. Under the IDCSA, the court "may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand dollars ($1,000)." Ind. Code § 24-5-0.5-4(a). The IDCSA doesn't define "willful." *See* Ind. Code § 24-5-0.5-2 ("willful" omitted from definitions). The IDCSA also says a "senior consumer relying upon an uncured or incurable deceptive act, including an act related to hypnotism, may bring an action to recover treble damages, if appropriate." Ind. Code § 24-5-0.5-4(i).

The Smiths argue that they are entitled to treble damages because Nexus willfully violated the IDCSA and alternatively because they were senior consumers who relied on an uncured deceptive act. In response, Nexus argues that the Smiths cannot seek treble damages because they didn't assert this right in the final pretrial order, because the question of willfulness is for the jury and not the court (and the jury didn't make a willfulness finding), because the company's actions weren't willful, and because treble damages would be inappropriate.

The Smiths never preserved the right to treble damages in the final pretrial order [ECF 98]. They never mentioned willfulness. They never alternatively cited Indiana Code § 24-5-0.5-4(a) or § 24-5-0.5-4(i). A "pretrial order is treated as superseding the pleadings and establishes the issues to be considered at trial." *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 628 (7th Cir. 2013) (quoting *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1443-44 (7th Cir. 1995)). "[A] claim or theory not raised in the pretrial order should not be considered by the fact-finder." *Id.* (quoting *SNA Nut Co. v. Haagen-Dazs Co., Inc.*, 302 F.3d 725, 732 (7th Cir. 2002)). The pretrial order serves the "vital function" of focusing the parties' efforts and conserving judicial resources. *Id.* at 628-29.

The Smiths didn't preserve the contentions that would support treble damages in the final pretrial order, so they cannot pursue them now. Scattered references to knowledge or statutory

5

damages in the complaint eludes the point. *See DeliverMed*, 734 F.3d at 628. Stray uses of the word "willful" in a motion *in limine* or tucked into a trial brief about an exhibit objection fail to preserve the point. The Smiths say Nexus too omitted this damages issue from the final pretrial order, but that merely proves the point of its undue surprise. And besides, stating what damages to recover in the final pretrial order wasn't the company's obligation.

The court is uninclined to deviate from its prior ruling. The Smiths have demonstrated no manifest error of law or fact or misapprehension to reconsider that ruling. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013). The last day of trial, the Smiths requested that the court include a jury instruction on willfulness [ECF 153 at 2-3]. *See also Gorlikowski*, 52 F.3d at 1445 ("where a party requests that jury instructions be modified to remedy a variance between a pretrial order and their trial presentation, that request is properly treated as a motion to modify the pretrial order"). The court found that the issue was outside the final pretrial order and that the order's modification wasn't necessary to avoid manifest injustice under Rule 16 [ECF 153 at 4, 7]. *See* Fed. R. Civ. P. 16(e). The Smiths had prior knowledge of the potentiality of treble damages. *See Pizel v. Monaco Coach Corp.*, 2005 U.S. Dist. LEXIS 20079, 6-7 (N.D. Ind. Sept. 13, 2005) ("if the evidence or issue was within the knowledge of the party seeking modification at the time of the conference, an amendment may not be allowed"). In addition, as the court already said, "this is one of those issues, particularly given the hammer that comes with it, that should be fully fleshed out so that everyone is aware in the final pretrial order that this will be litigated, and both sides have the ability, then, to marshal evidence either for or against that" [ECF 153 at 7]. The court's requirements for the final pretrial order were clear. The court denies the request for treble damages.

  C. *Attorney Fees and Costs.*

The Smiths request attorney fees and costs. No one argues that this remedy eluded the final pretrial order; and, in fairness, the Smiths included contentions in that order that would naturally give

rise to this recovery. Nexus also had replete notice of the attorney fee issue in discussing the offer to cure letter before the company presented its defense case at trial and before the court ruled on today's motion. The Smiths' ability to recover attorney fees and costs under the IDCSA stems directly from their success on the merits of their IDCSA claim.

The Smiths seek $267,206.64 in attorney fees and $4,406.98 in costs. Under the IDCSA, the court may award reasonable attorney fees and costs to the Smiths as the prevailing party, given the absence of an offer to cure. *See* Ind. Code §§ 24-5-0.5-4(a), (k). The federal rules also authorize costs for the prevailing party, *see* Fed. R. Civ. P. 54(d)(1), and attorney fees if a statute (or other source) authorizes their recovery, *see* Fed. R. Civ. P. 54(d)(2)(B). Nexus objects to the reasonableness of attorney fees and then to a subset of copying costs.

First, to the fee issue: the Smiths bear the burden of "producing satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). If the Smiths satisfy their burden, then the burden shifts to Nexus "to offer evidence that sets forth a good reason why a lower rate is essential." *Id.* (citation and internal quotations omitted). If the Smiths don't satisfy their burden, the court "has the authority to make its own determination of a reasonable rate." *Id.*

The court uses the lodestar method to determine a reasonable fee amount. *Id.* at 639. Under this method, the court multiples the "number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The attorneys aren't required to record in great detail how each minute of their time was expended, but they should at least identify the general subject matter of their time expenditures. *See Hensley*, 461 U.S. at 437 n.12. The essential goal in shifting fees "is to do rough justice, not to achieve auditing perfection." *Montanez v.*

7

*Simon*, 755 F.3d 547, 555 (7th Cir. 2014) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). The determination of fees shouldn't result in a second major piece of litigation. *Id.* (citation omitted).

The Smiths were represented by three attorneys: Ronald Burdge, Elizabeth Wells, and Scarlett Steuart. Mr. Burdge submitted an hourly rate of $450. Ms. Wells submitted an hourly rate of $350. Ms. Steuart submitted an hourly rate of $225.[1] The Smiths bear the burden of showing that these hourly rates reflect the "market rate" for their services. *See Rice v. Sunrise Express, Inc.*, 237 F. Supp.2d 962, 972 (N.D. Ind. 2002). The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 555 (7th Cir. 1999) (citation omitted). Each of these lawyers filed an affidavit, and three local practitioners verified that these rates fell within the applicable market rate for this district.

Mr. Burdge has been practicing law since 1978. He has represented consumers in over 7,000 cases involving the same or similar laws and claims. He says $450 is a reasonable hourly rate for the legal services that he rendered here. His normal hourly rate, which other clients have paid in the Northern District of Indiana, is $525. He discounts his rate to $450 per hour when a client is a Vietnam War combat veteran.

Ms. Wells has been practicing law since 2004. She has been with the Burdge Law Office since 2004 and has continuously practiced in the fields of consumer law, warranty, and sales fraud. She has represented hundreds of consumers against dealers and manufacturers in similar cases. She says a rate of at least $350 per hour would be reasonable for her services here. Mr. Burdge says $350 is her normal hourly rate, and she has been paid that rate by other clients. He asserts that $350 per hour is a reasonable rate for his colleague.

---

[1] Aside from the three attorneys, Nicolette Trevenen (law clerk) worked at an hourly rate of $165, and Alana James (paralegal) worked at an hourly rate of $135 [ECF 132 at 11; ECF 132-5]. Nexus doesn't dispute the hourly rates of these two individuals.

Ms. Steuart has been practicing law since 2015. She has represented consumers in similar warranty and consumer law cases involving defective vehicles since August 2016. She says a rate of at least $265 per hour would be reasonable for her services here. Though her normal hourly rate is $265, the Smiths only seek $225 per hour for her services. Mr. Burdge asserts that $225 per hour is a reasonable rate for her in this case.

Other practitioners known to the court echo the reasonableness of these rates. Daniel Pfeifer has been practicing law in Indiana since 1979 and has tried more than 300 jury trials as a deputy prosecutor in St. Joseph County and as a private personal injury attorney. He calls the rate of $450 per hour "very reasonable" for Mr. Burdge and "roughly in [the] middle of the range of the Northern Indiana market for litigation and trial services." Robert Duff, who exclusively handles consumer law cases for Indiana consumers and has been practicing law in Indiana since 1992, calls each of the three rates reasonable based on his experience. Lyle Hardman, a 20-year veteran of civil litigation in Northern Indiana, likewise supports the rates for each of these three lawyers.[2]

The Smiths have satisfied their burden by providing evidence of the reasonableness of their rates—through their own affidavits and the preferred course of third-party verification. *See Pickett*, 664 F.3d at 640. This presider also handled product, warranty, and other consumer litigation for many years before taking the bench, and these rates are reasonable given this case's level of relative difficulty, each attorney's level of experience, and the result obtained. The $450 per hour certainly edges the higher side for this type of case, given its real nature, but reasons exist too why that rate is reasonable.

---

[2] Nexus says Mr. Pfeifer provides no basis for how he determined that Mr. Burdge's hourly rate of $450 is in the middle of the range, but Mr. Pfeifer said his opinion was based on his 40 years of experience, his familiarity with Mr. Burdge, and a review of Mr. Burdge's curriculum vitae [ECF 132-17 ¶¶ 4, 6]. Nexus argues that Mr. Duff hasn't established how he is familiar with the South Bend legal market, but Mr. Duff said he regularly practices in the Northern District of Indiana, knows lawyers in South Bend, and is familiar with the legal market in the Northern District of Indiana [ECF 132-16 ¶¶ 1, 8]. Nexus offers no critique of Mr. Hardman.

The Burdge Law Office took this matter on a contingency basis. Though the court adheres to the lodestar method without enhancing any award for contingency arrangements, *see City of Burlington v. Dague*, 505 U.S. 557, 562 (1992), such an arrangement presents risks, *see Gisbrecht v. Barnhart*, 535 U.S. 789, 810 (2002). As Mr. Burdge explained, had the Smiths not prevailed, then he and the other attorneys would have only received a modest retainer fee [ECF 132-1 ¶ 6]. This makes a straight apples-to-apples comparison to defense rates inappropriate because it overlooks the risks inherent in contingency fee arrangements—arrangements not foreign to these consumer law claims. Such risk supports the fee structure in this case.

Jim Groves, well known to this court as a near-50-year trial lawyer, opines that a reasonable and fair rate for trial services in the local legal market would be $300-$350 an hour. Even taking this viewpoint to heart, the Smiths seek a total fee award that, when divided by the total number of hours, results in a blended effective rate of roughly $309 per hour—thus right within his expectation—though he might adjust the individual rates of each attorney downward.

Nexus says a review of past cases shows that these attorneys are rarely awarded the rates they are now requesting, without providing a discussion of these cases or why the past rates should continue to apply here, particularly in light of the statements from many experienced counsel attesting to the reasonableness of these rates. *See Pickett*, 664 F.3d at 640. Nexus notes that Mr. Burdge was awarded $350 per hour in *Ottaway v. REV Recreation Group, Inc.*, 1:16-CV-162-WCL-JEM (filed May 17, 2016). In that case, Mr. Burdge requested a rate of $500 per hour. He submitted his own affidavit and affidavits from three other practitioners. None of the other affidavits said how Mr. Burdge's rates compared to the market rates in Allen County or the Northern District of Indiana, whereas the defense presented an affidavit from an attorney with 25 years of experience in the local market who opined that $350 per hour was reasonable for Mr. Burdge. Judge Lee's ruling then wasn't surprising.

This court has been presented with an altogether different record. Mr. Pfeifer, Mr. Duff, and Mr. Hardman support Mr. Burdge's requested rate of $450 per hour. Nexus also argues that Mr. Burdge's own survey report from 2018 supports an hourly rate of $300 for him, but that study lists the *median* rate of attorneys handling vehicle cases in South Bend as $300 per hour [ECF 148-3 at 4], without seeming adjustment for his longstanding practice or experience. Given the blended effective rate of roughly $309 per hour, lower still after the court's adjustments today, the fee recovery stands in line with this study.

Nexus argues that the Smiths ultimately recovered on only two of their original twenty IDCSA theories such that fees should be reduced accordingly; but, on this record, nothing demonstrates that this case was commandeered by wasteful effort on these alternative theories. *Cf. Litsinger v. Forest River, Inc.*, __ F. Supp.3d __, 2021 U.S. Dist. LEXIS 83190 (N.D. Ind. Apr. 30, 2021). The court has warned before of unnecessary kitchen-sink approaches to the IDCSA. The court agrees with John LaDue (a seasoned trial lawyer and affiant likewise known to the court) that alleging twenty deceptive acts, most all of which had nothing to do with the overriding weight issue, was inefficient and unnecessary. Doing the same in the notice letter was overkill too.

That said, nothing today shows that these other theories wasted discovery efforts. Summary judgment appropriately focused on the key triable issues (save for the idea that a warranty breach alone would be enough to sustain an IDCSA claim, but that was a mere passing point in briefing). A broader pleading precipitated a motion *in limine* from Nexus on alternative IDCSA theories, but argument properly winnowed the theories to the two presented to the jury (save again the idea that a warranty breach alone would be enough to sustain an IDCSA claim). Nexus points to no material duplication of effort by the Smiths in pursuing alternative IDCSA theories in that, by this point, they hinged only on the weight issue. The court cannot say on this record that fees should be reduced for this reason.

11

Overstaffing at trial resonates with the court. By the time of trial, this case proceeded on a simple weight issue that required only three live witnesses for the Smiths (four others by deposition designations) and a modest number of exhibits, albeit an issue housed in a more novel IDCSA rubric on which few cases have elucidated its patchwork of provisions. The defense presented three live witnesses (and one other by deposition). True, the attorneys for the Smiths divvied up tasks, including direct examinations, crossexaminations, opening and closing statements, Rule 50 argument, and the like, and thereby pushed some work to a lower rate, *see Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007) (use of more than one lawyer "often results in a more efficient distribution of work"); but nary such case would require more than two lawyers. Two lawyers defended the case for the company. Two lawyers could easily pursue it.

John LaDue echoes this concern, and fairly so noting that Mr. Burdge, the most experienced lawyer, billed the most time by a large margin and thus remained intimately familiar with the case. Jim Groves notes the same unusualness of having three lawyers attend trial of such a commercial case. That said, the total bill for trial wasn't tremendously unreasonable. In review of the trial time, there is some modest but notable inefficiency. For examples (though others exist), a third attorney might need to lend preparatory or drafting support, though not be present during long trial days; duplication of effort on closing argument would be unnecessary; a third attorney would not be needed to read into the record deposition transcripts as the designated "witness" before a jury. Certain tasks would need to be reallocated, and that might mean at a higher rate, though with expected greater efficiency.

From the time the three attorneys appeared to begin true trial preparations (*e.g.*, draft examinations around May 17 and 18, 2021) and then traveled to South Bend for trial through the time they spent traveling home, Mr. Burdge billed 104.38 hours ($46,971 at $450), Ms. Wells billed 84.66 hours ($29,631 at $350), and Ms. Steuart billed 69.20 hours ($15,570 at $225). The total bill for trial was $92,172—higher than its reasonable wheelhouse for this type of case and for an alleged case value

of roughly $170,000, a recreational vehicle priced at $157,300 (all in), and a jury award of $150,000. This trial expenditure translates to an effective rate of about $357 per hour. The court reduces the trial expenditure by $15,000—a blended reduction based on a third of the two assisting counsel's fees—to address this inefficiency of having three counsel attend trial for this type of case.

Nexus also argues that opposing counsel billed excessive amounts for travel time. Nexus calls time spent on travel to court like charging for travel to the office, though one is hardly like the other. "[L]awyers invariably charge their clients for travel time, and usually at the same rate they charge for other time." *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984). Still, nearly all time spent traveling to South Bend for trial or to the courthouse for trial was billed by an imprecise quarter hour. Quarter-hour billing is not "per se unreasonable," but it tends to inflate artificially the amount of time needed. *See LaSalvia v. City of Evanston*, 2012 U.S. Dist. LEXIS 89434, 10-11 (N.D. Ill. June 28, 2012). The court reduces each attorney's time by one hour, resulting in a reduction of $1,025.

In testing the fee amount for reasonableness, the court may consider the results achieved and the character of the representation. *Gisbrecht*, 535 U.S. at 808. The Smiths retained Burdge Law Office on August 25, 2017. The case has pended since October 31, 2017. Based on records from Burdge Law Office, Mr. Burdge worked 347.61 hours, Ms. Wells worked 151.46 hours, Ms. Steuart worked 187.00 hours, Ms. Trevenen worked 10.80 hours, and Ms. James worked 168.65 hours [ECF 132-5]. In total, Burdge Law Office spent 865.52 hours on the case. In considering the reasonableness of the hours expended on the litigation, the court bears in mind that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. "[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit . . . [t]he result is what matters." *Id.*

This case included express warranty, implied warranty, Magnuson-Moss Warranty Act, and IDCSA claims (aside from revocation and rescission remedies). Nexus moved for summary judgment

13

on all claims, and the court granted summary judgment on the state and federal express warranty claims. Accordingly, the Smiths reduced the total fee amount by the time that was spent on the part of Nexus' summary judgment motion that the Smiths lost [ECF 132-1 ¶ 10]. This withdrew 50 percent of the fees attributable to the summary judgment, reducing the amount from $12,587.95 to $6,293.98 [*id.* ¶ 14]. The Smiths also reduced the total fee amount 50 percent for complaint drafting ($585.00 reduction), 10 percent for certain document production ($80.19 reduction), and 10 percent for certain written discovery and depositions that related to the express warranty theory ($1,897.44 reduction) [*id.* ¶¶ 11-13]. The total reductions here amounted to $8,856.61 [ECF 132-5]. Using his billing discretion, Mr. Burdge also reduced 113.07 hours of various time entries to a "no charge" status [ECF 132-1 ¶ 15]. These entries were deleted from the fee request entirely. Even at the lowest billing rate of the three primary counsel, this was an additional $25,000 reduction.

These entries smartly tailor the fee request to the IDCSA. Nexus argues for more, but this case involved "a common core of facts . . . based on related legal theories." *Hensley*, 461 U.S. at 435. As such, the lawsuit "cannot be viewed as a series of discrete claims," at least not entirely, and the court instead focuses on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* "Ultimately, the guiding inquiry is whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Montanez*, 755 F.3d at 553 (citation and internal quotations omitted).

The key factual issue was whether the recreational vehicle that the Smiths purchased from Nexus weighed more than it should—whether that meant Nexus breached an implied warranty or violated the IDCSA. With the unit priced at $157,300, the jury awarded the Smiths $150,000 in actual damages. The Smiths also got to keep the unit. Although "a plaintiff need not prevail on every claim or legal theory to receive fully compensatory attorney's fees," *Sottoriva v. Claps*, 617 F.3d 971, 976 (7th Cir. 2010), the court may properly reduce the lodestar figure when the plaintiff has achieved only

"partial success." *Id.* The Smiths arguably recovered on the more difficult theory to prove—the IDCSA claim—and in actuality needed no additional recovery from an implied warranty claim.

Entries demonstrably related to the implied warranty theory would not support a fee recovery. The UCC contemplates no such thing absent a contractual basis. The statutory basis comes solely from the IDCSA. For instance, legal research on the implied warranty theory is not recoverable today. Counsel also included several time entries based on its work throughout the discovery process related to Fabel RV. Fabel RV is a repair facility where the Smiths went to have defects repaired that were related to the express warranty claim. That claim didn't survive summary judgment. Based on a review of the time logs and appreciating that "[p]recision is impossible in [these] calculations," *id.*, the court reduces the fee request by $2,350.

Considering the reasonable reductions already made by Burdge Law Office and these other reductions made by the court, the court isn't inclined to reduce the fee award more. Nexus makes other general arguments for why the fee award should be reduced further, but the company presented a stalwart defense that contributed to the case's demands. *See Pressley v. Haeger*, 977 F.2d 295, 298 (7th Cir. 1992). Based on the degree of success obtained by the Smiths, the fee requests made by their counsel, and the arguments by the parties, the court arrives at a total fee award of $248,831.64.

Now to costs. The Smiths filed a bill of costs, which totaled $4,406.98 [ECF 125]. There is a presumption that the prevailing party will recover costs, though the costs "must be both reasonable and necessary to the litigation" for the prevailing party to recover them. *McAllister v. Innovation Ventures LLC*, 2020 U.S. Dist. LEXIS 138091, 10 (N.D. Ind. Aug. 4, 2020); *see* Fed. R. Civ. P. 54(d)(1).

Nexus objects to the $391.92 that the Smiths expended in printing costs for their trial exhibits. This cost was incurred on July 7, 2020 [ECF 132-10 at 17]. At the time, the trial was scheduled for August 17, 2020. Three days later, the defense filed a motion to continue. The court granted the motion and reset the trial to April 5, 2021.

Nexus argues that a party may not recover costs for copies for its own use, citing *Amerisure Ins. Co. v. Roll Serv.*, 2003 U.S. Dist. LEXIS 11221, 4 (N.D. Ill. July 1, 2003). In that case, the prevailing party was specifically seeking "document copying fees" and it was unclear "how many copies of each document were made, how many pages were in each document, at what rate the duplication was billed, or to whom the copies were sent." *Id.* Here, the cost entry is for "Plaintiff Trial Exhibits" [ECF 132-10 at 17]. The Smiths reported that the costs were for "our office printing charges for printing trial exhibits prior to the initially scheduled trial in 2020" [ECF 135-1]. She didn't say the costs were for additional copies of the exhibits for their own use; and, if additional copies were made, it seems conceivable they were for copies needed for the court or jury during a COVID-19 period in which separate binders were required. As the Smiths point out, the defendants didn't offer to print the subsequently agreed-upon joint exhibits for trial until March 26, 2021, which was after the trial had already been continued [ECF 141-1].

Nexus says "[t]he burden is on the party seeking reimbursement for photocopying costs to show that the photocopied items were necessary," *Tirapelli v. Advanced Equities, Inc.*, 222 F. Supp.2d 1081, 1086 (N.D. Ill. 2002), and that the Smiths haven't met their burden here. Though "Plaintiff Trial Exhibits" doesn't provide much detail, the Smiths are only required to "provide the best breakdown [of their costs] obtainable from retained records." *Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991). This cost amount appears to have been reasonable and necessary to the litigation at the time that it was incurred because it was made when the Smiths were operating under the assumption that trial was about a month away. Given that and the presumption that costs be awarded, the court overrules the company's objection.

## CONCLUSION

For these reasons, the court GRANTS IN PART the Smiths' motion as to the pre-suit letter [ECF 127], DENIES their motion for treble damages [ECF 129], GRANTS IN PART their motion

for attorney fees and costs [ECF 131], and AWARDS attorney fees in the amount of $248,831.64 and costs in the amount of $4,406.98. The court SETS a status conference via videoconference for December 15, 2021 at 1:30 p.m. to discuss the bifurcated claim against Ally Financial and to set trial, if necessary, to enable the court to enter final judgment.

    SO ORDERED.

    November 19, 2021                                *s/ Damon R. Leichty*
                                                           Judge, United States District Court